The second case for argument is Kelsey Weyer v. Reliance Standard Life Insurance Company. The third case for argument is Kelsey Weyer v. Reliance Standard Life Insurance Company. Good morning. Mr. Bachrach, we'll hear from you first. Good morning. May it please the Court. Joshua Bachrach, and I represent the appellant, Reliance Standard Life Insurance Company. A little shorter than the other counsel. I apologize. I'd like to reserve three minutes of time for rebuttal. Well, the clock will continue to run, so if you want to reserve, you'll have to stop at that time. Thank you, Your Honor. There are multiple errors with the district court's decision in this case, both factual and legal. The first and most important one is the court refused to apply policies, mental or nervous disorders limitation. That issue is reviewed de novo by this Court. Counsel, would you pull the microphone a little closer? Yes. Sorry about that, Your Honor. So under this limitation, after benefits have been paid for 24 months for a disability that is caused or contributed to by a mental or nervous disorder, no more benefits are paid on that basis. The person has to be totally disabled solely from a physical condition. In this case, we know that the claimant had a past history before this claim of severe anxiety and depression, had been institutionalized at one point. We know that under one of the claim forms, it listed general anxiety disorder due to working as a basis for the claim, and we know that throughout the records, anxiety and depression are listed as causes of her inability to work. So this limitation should apply, but the district court refused to do so. According to the district court, the anxiety and depression were downstream effects of physical conditions, and therefore, the limitation should not apply. That's contrary to ERISA law, which requires you to apply the plain language in the policy, and this Court has addressed the plain language. That was done in Brewer v. Lincoln National Life, 921 F. Second, 150. That case dealt with a similar limitation, although in the context of a health claim, but that doesn't matter. The Court said that the average person, a lay person, looks to, if it's anxiety, if it's depression, it's a mental illness. You don't look at etiology. You don't look at cause, but that's exactly what the district court did here, and that's wrong. On this basis alone, we know the district court decision should be reversed, but then you go beyond that, and counsel argues, my colleague argues, that Ms. Ware is nevertheless disabled physically, and in support, on page 31 of her brief, she identifies a host of diagnoses. The problem is, as this Court has repeatedly stated, a diagnosis is not an impairment. You have to show proof of impairment, and even those diagnoses are not fully in agreement because there's a basis on Lyme disease, but the testing was negative. They claim that the irritable bowel syndrome and gastrointestinal problems are physical, and yet her own doctor, Dr. Lovato, said, no, that's somatic disease. That's cause. Her stomach problems, her pain is based on her anxiety. Then you have the chronic fatigue, but those symptoms are cognitive. All those symptoms are the same as what you would have with anxiety and depression. So that's a problem here, that there is no, and we pointed this out, there is no opinion from any of her doctors that after 24 months she remained totally disabled from a physical condition. So why not present a medical doctor who says all of those things? My understanding is that the one is Dr. Green that sort of suggests that there's no disability here, but he qualifies it, I think it's a he, qualifies it by saying from a physical medicine and rehabilitation perspective or something like that. Right, because that's the only issue that's left at that point is from a physical medicine. Well, first of all, the doctors stay within their specialties. So we had somebody address the mental aspects of the claim, but we also had somebody addressing the physical, and a PM&R doctor is appropriate, physical medicine and rehabilitation. So that person in their own specialty is looking at whether there is a physical disability. But remember, the burden of proof is on the claimant here, right? She had after 24 months to prove that she's totally disabled from any occupation from a physical condition. But a physical and rehabilitation specialist, I don't think, you can tell me if I'm wrong, has no real specialty in Lyme disease, didn't really discuss Lyme disease, and didn't discuss chronic fatigue syndrome either, unless I'm mistaken. You can correct me. Well, I believe those were addressed, and I could go back and look and find them. But the fact is this Court has stated and other courts have stated that you don't need a specific specialist. We didn't need to go out and find a specialist in Lyme disease and then to find another one in gastroenterology for iterable bowel syndrome, that a PM&R doctor is sufficient to address the physical claim. I agree with that. I guess my point is we're on a clear air standard review as to the findings, not as to the legal conclusions. And I'm trying to figure out how when we have doctors who say that there's Lyme disease and chronic fatigue and we don't have the insurer with contrary medical evidence, how we can say that that's clearly erroneous what the district court found. Well, I'll explain why. Because none of her doctors have said that she is totally disabled solely from a physical condition. And that's her burden. That's her burden of proof. Now, counsel cites to page 3528 of the appendix and says Dr. Henderson said that. So I implore you to look at that page in the record because that's not what it says. The doctor's referring to anxiety and depression and other conditions, right? You're focused on the mental illness exclusion, then, more than anything. Well, the court's clearly wrong. The district court was clearly wrong. So now I'm turning to, okay, well, did she still prove that she was only physically disabled? And she didn't. That's what I'm talking about at this point. So Dr. Henderson said she has anxiety and depression, but those are downstream effects. That's where the district court got that language from. So he's including her mental problems. You have page 3524 of the appendix is another report by Dr. Henderson, and he's saying she's not primarily disabled from her psychiatric condition, which is not the same as saying she's totally disabled solely from a physical condition, which is the requirement after 24 months. Doctors Lovato, Dr. Barter, all of her treating doctors have listed anxiety and depression as contributing to this disability, whereas none of them say she's physically totally disabled. Well, and I understand that. I guess I was getting at your first issue, which is, I mean, I understand the mental illness exclusion, but whether or not she has proven that those physical conditions, maybe combined with the mental illness, maybe not combined with the mental illness, it doesn't matter at that point, creates total disability. I'm just trying to figure out how that all interacts. It can't. After 24 months, the mental conditions cannot, under the Brewer case, under the Stott case, under the Waukee case, the mental illness components cannot be considered as a factor in contributing to the disability, because a lay person considers anxiety and depression to be mental illnesses. You've been paid for 24 months. Therefore, you can't get them on that basis, even if it contributes. You have to prove you're solely disabled due to a physical condition. And so what's wrong with the but-for standard that all the other circuits seem to have adopted? Well, they seem to be a little, some of them are, they all say the same thing. The but-for is that if you're physically disabled, so but-for a physical disability, you're not entitled to additional benefits. They all say that. The gun case out of the Ninth Circuit, the person had multiple sclerosis, was diagnosed, and immediately had a mental breakdown. Are you agreeing that that's the right legal standard, that it's a but-for? I think if it's applied, the problem is that some courts, the Acuna court in the Sixth Circuit, got a little bit confused on what the but-for meant. I'm just asking a simple question. I'm sure. Why do you think that is the correct legal standard? I don't, to be honest. I think the legal standard is stated in the Brewer case, it's stated in the Stott case, and what the standard is, is that after you've been paid for the period of time that the limitation allows, then you're no longer allowed any additional benefits based on that component, the mental illness. That is what was said in the Brewer case. The but-for gets confusing. Even if the physical disability? No, you're 100% correct. I'm sorry, I didn't mean to interrupt. What am I correct about? You're correct that if they're still physically disabled only, they can continue to receive benefits. What do you mean by only? Let's say somebody is hit by a bus and they're a quadriplegic, but they're also depressed. Is that person disabled because the physical disability by itself renders them unable to work? Yes, sir. Okay. So even if that person has anxiety that's also contributing to the person's inability to work, the person would be disabled? 100%, yes, sir. Okay. I think that's the but-for. I apologize. I think you're agreeing with the but-for standard as I understood it from the other circuits. Go ahead. No, the problem is, Your Honor, I have to clarify. So in the Sixth Circuit, they confused that issue. I've actually got an appeal going on there where the district judge made a mistake in that one, and we're trying to sort what that means based on the but-for. But we're in agreement. So if she's totally disabled from a physical condition, she continues to get benefits. The problem is she didn't prove that here. This Court, again, she relies on diagnosis. And this Court has said you have to have impairment. And yet, moreover, you have to have objective evidence of impairment. So what we have in this case is no objective evidence. And counsel cites to pages and pages of the record, which are simply office notes detailing their complaints, her complaints. And counsel says that the Social Security decision is objective evidence. But it's not. An ALJ decision is not objective evidence. But even if it could be considered, what did the ALJ say here? That she has a significant mental impairment that prevents her from working. So it supports my position. So most of the decisions that have discussed this objective evidence are under the arbitrary and capricious standard. But we think this Court should apply it under de novo review as well. Why? Because it doesn't have to deal with the standard of review, the deference given to the defendant. It has to do with the burden of proof in a claim like this one based on subjective conditions. And, well, counsel, aren't there records in this case in which her physicians found limitations, positional limitations and exertional limitations, limitations in walking, sitting, lifting, positioning, climbing? But that's not objective. Objective, as this Court explained in Green v. Union Security and numerous other cases, is a functional capacity evaluation to confirm because they check your respiration. They check other things. So that's objective evidence of what a person's true capabilities are. For cognitive, now that's important here because most of this is cognitive here. For cognitive issues, we have some called neuropsychological evaluation. One was done in this case. Her own doctor, Dr. Barter, said the results were not, could not be followed, that they were just too out there. She recommended repeat neuropsychological testing with validity measures. So her own doctor says, here's what you need to do to objectively prove your claim, and she never got it done. So that goes against her. So why in a case like this do we need objective evidence especially? She's 30 years old, mid-30s now. Her doctor, one Dr. Henderson said she has the ability of a doorstop. Dr. Barter says she's couch or bedbound, and yet we have surveillance. And in this surveillance, she's mowing her lawn. But the district court refused to even consider it. Said, we don't know it's her, even though she never disputed it was her, and her own doctor referred to it. That is a clearly erroneous finding of fact, to refuse to consider evidence in the record that is undisputed. The doctor did the, or the district judge did the same thing as far as the. Well, I think that's not fair to the district judge. Just, you know, the district judge also said, and you can correct me if I'm wrong, that it's also consistent with the limitations proposed by the medical evidence in the case. That if you're mowing the lawn for 14 minutes, that's completely consistent with what the doctors were saying. But her doctors are saying she's bedbound, couchbound, a doorstop. That's what her doctors are saying. That's why this is important. I would like to reserve the remainder of my time. Thank you. Very well. Thank you for your argument. Mr. Bauer, we'll hear from you. May it please the Court. My name is Blake Bauer, and I represent the appellee, Kelsey Weyer, in this matter. As opposing counsels stated earlier, there's effectively two issues before this Court. Whether or not a clear error was made based upon the Court's decision and analysis in use of the plan's mental or nervous disorder limitation, as well as whether there was a clear error when the district court found that the preponderance of the evidence supported Ms. Weyer's disability claim for many occupation. As for this first issue, the plan's mental and nervous disorder limitation, no clear error was made by the Court. This is because the preponderance of the evidence fully supported Ms. Weyer's disability claim based specifically on her physical ailments. It's Reliance's position that the district court somehow stated that her depression and anxiety have some type of organic etiology to it. Based on a plain reading of what counsel cited to end the district court decision, it doesn't say that. Counsel's referencing one sentence from Dr. Julie Barter, in which she states, depression and anxiety that stem from a true physical and neurocognitive disability should not be mistaken for an organic psychiatric disease. Rather, they are downstream effects caused by the physical illness and cognitive dysfunction characteristics of chronic fatigue syndrome. This one sentence merely states that Ms. Weyer's physical conditions do have downstream effects on her in the forms of anxiety and depression. A plain reading of the district court decision, you will see that it never focuses on the etiology of anxiety and depression. Rather, it essentially does a but-for inquiry into Ms. Weyer's physical ailments, which, as the Court referenced, has been adopted in the Third, Fifth, Sixth, and Ninth Circuits. And it's this assessment of whether or not a claimant has proven their physical disabilities by themselves precluded a person from working in any gainful occupation. Opposing counsel cited to the three cases from the Eighth Circuit that it is attempting to avoid this but-for inquiry. This is the Brewer case, the Stock case, and the Waukee case. The Brewer case, I would say, is not analogous to the present case for one primary reason. The policies in Brewer specifically dealt with an absolute maximum amount of bills that could be spent for hospital charges due to a mental illness. Opposing counsel already stated there's no cap on benefits for a long-term disability recipient under this policy if they can prove they are disabled from a physical condition exclusively. Then there's the Stock case. That was keeping in line with the Brewer case. However, Stock's primary disabling condition there was, in fact, depression. And they attempted to make this etiology argument, which the court correctly stated that was not appropriate under those circumstances. However, Ms. Weyers never made an etiology argument. She's never denied having anxiety and depression. She was never institutionalized, but she doesn't deny having anxiety and depression. And the district court never made a finding on this etiology as well. The third case is the Waukee case. And I would say this is probably the most analogous of those three cases that opposing counsel cites to. And in Waukee, this court decided that it was not an abuse of discretion for an insurance company to deny benefits based on the use of the mental health and nervous disorder limitations in that policy. I still believe that this court can follow the Waukee decision and also apply the but-for inquiry that has been applied in the other circuits, particularly when you note the court's actual ruling. Given the absence of any objective medical finding that Waukee's condition is caused by a physical heart disease or disorder, this part of the Waukee decision is extremely significant because it lends itself, even in 2001 when the Waukee decision was issued or decided, it is almost as if the court was trying to adopt some but-for type of inquiry into mental health conditions and physical conditions. But it was unable to do so because there was this lack of objective medical evidence. So opposing counsel says there's no objective medical evidence. And this premise, this argument is based upon the notion and precedent that it's not an abuse of discretion for an insurance company to deny based on a lack of objective evidence. There are a few issues with Reliance's arguments here, first and foremost being of the cases that they cite to from the Eighth Circuit and other circuits. Almost every one of them was decided at the district court level on an abuse of discretion review. This case was decided on a de novo review at the district court level. So it might not have been an abuse of discretion, but that's not for this court to consider. It was at a de novo review, so it has to be clearly erroneous for this court to overturn the decision. The second glaring issue is Reliance's arguments with this objective evidence part, is the policy neither defines objective evidence nor what is sufficient proof. Therefore, Weyer has utilized Eighth Circuit precedent in Polonsky v. Metropolitan Life in which this court provided concrete examples of what is objective clinical evidence. And these were to include lab results, medical records, restrictions and limitations, medications and ongoing treatment plans. This record was extremely large, thousands of pages, of which Ms. Weyer provided an immense and abundance amount of objective medical evidence in the form of lab results, medical records, restrictions and limitations, ongoing treatment plans and even a neurocognitive assessment. What do you make of opposing counsel's argument about Lyme disease in particular, that the blood test didn't show that she was positive for it? With the Lyme disease, that is not my client's primary disabling condition. Whether she had Lyme disease or didn't have Lyme disease, it's more or less an argument against opposing counsel's diagnosis as meaning nothing. It's all about the restrictions and limitations. It's not our position or it's not Ms. Weyer's position or the court's stance that she had no work restrictions or limitations assigned to her. She had a plethora of work restrictions assigned to her. I think his argument, though, is that if you knock out the Lyme disease, then it starts to look like the mental health issues play a larger role in the disability. I would agree with you in the sense that if Lyme disease is out, that might not be an underlying physical disability for her, but the migraine headaches, the chronic fatigue syndrome, all of those would not fall under the mental health umbrella, and those are her more primary disabling conditions if you have to knock Lyme disease out. And almost every one of her treating physicians assigned her restrictions and limitations based upon chronic fatigue syndrome and migraine headaches. Diagnoses were there to help assist the not only physicians, but help the district court understand why they were assigning her restrictions of no walking more than 15 minutes, no pushing a lawnmower on a small yard. For example, when the court referenced that in the footnote on page, I believe it was 11, of the district court's decision. Diagnoses are an assistance to understand why the physician is assigning such limitations and restrictions. Now, with this objective medical evidence argument, I firmly believe no clear error was made by the district court when it weighed the evidence and found that the preponderance of that evidence supported Ms. Weier's disability claim based solely on her physical ailments. Counsel, when you read this opinion, one thing I note is that as the district court reviewed the various doctors' opinions, what they quote, what the court quotes is like conclusory kinds of statements instead of, like, reflecting test results or anatomical or physical limitations. Example, Dr. DiMeo, she will not be able to, quote, regain part-time or full-time work or gainful activity, which my understanding is normally that's, those kinds of calls are not really within the physician's purview. Most of the direct quotations this district court made were snippets of a very extensive record with copious amounts of medical records and opinions, treatment notes, ongoing plans. So the snippets that were used were more or less to respond to the issues raised by myself and opposing counsel in their memorandums of law to the court, in which they stated, nobody is assigning her restrictions or limitations. And so in response to that, the district court quoted to a restriction and limitation from one of the five or six physicians that the court condensed the opinions to that were disputed at the district court level. Is that an overbroad restriction and limitation? Yes. Does she have other physicians? Dr. Henderson saying no work due to chronic fatigue syndrome. Dr. Kung stating limiting her ability to look at computer screens due to her migraines and ability to need to not work when she's experiencing migraine, of which she has five to seven a day. Well, would you agree that the district court did not quote the most helpful excerpts from the records? I would have loved to have seen some different ones, to be honest, but that's not a clearly erroneous thing for her to do. It was her opinion that here's a restriction and limitation. It's clearly wrong to state that she has none assigned to her. The last glaring issue for this objective evidence argument that opposing counsel has raised is the mere fact that it's seemingly trying to shy away from the rigorous clear error review that they are under. And they failed to cite the probably two most precedential cases on this exact issue because they dealt with this clear error. That's the Sloan v. Hartford Life as well as Avianoso v. Reliance Standard. In those two cases, this Court went over the rigors of a clear error review and state that the Court of Appeals may not reverse on a clear error review even though convinced it would have weighed the evidence differently. And even though that Reliance can report .2 specific instances that might show Ms. Weyer was not disabled, the Court ruled in both Sloan and Avianoso, this is simply not enough to say there was a clear error made. This Court affirmed the district court decisions in Sloan and Avianoso based on effectively three things. A favorable decision from the rigorous Social Security Disability Standard, subjective complaints from a plaintiff regarding their disability which the district court deemed credible, as well as, and I will quote this one, some favorable medical evidence. Weyer produced opinions from multiple physicians, all of which fully supported her disability claim from her physical ailments. She had a favorable Social Security administration decision. She even had one of Reliance's own reviewing doctors, Dr. Kaufman, agree with her disability claim and favor it. And, of course, she also had some other more favorable medical evidence as well. This Court affirmed the decisions in both Sloan and Avianoso based on very similar fact patterns. It should affirm the case, it should affirm the district court's decision in Avianoso. Putting case law aside just for a minute, let's take a look at the real-world impact that would happen if the Eighth Circuit were to adopt Reliance Standards position, that it should be permitted to limit long-term disability benefits to 24 months if a person has a mental health condition. The impact on any claimant receiving disability benefits would be catastrophic. Anybody that is experiencing a physical disability, an inability to work, an inability to financially support themselves, their family, their loved ones, naturally is going to deal with some form of depression or anxiety. To give them the carte blanche ability to terminate benefits based on the mere presence of depression, anxiety, would have catastrophic results. This is why other circuits have applied this but-for inquiry into assessing whether or not a person has proven they are disabled based on physical disabilities alone. I would ask this Court to also adopt and keep in line with Eighth Circuit precedent and apply a but-for inquiry. Do we have to apply the but-for inquiry for you to win, or is there — I'm just curious what you think. I think you can read Waukee and say, in that case, on an abuse of discretion review, there wasn't — there was a lack of objective evidence in that case. We don't have that problem here. It was an overall review of the District Court. On top of that, there is an abundance of objective evidence to support it. So I'm not saying we need to disregard Waukee, Brewer, and Stock and apply a but-for. There's definitely evidence here of — What was that? There's definitely evidence here of anxiety and depression and so forth, right? That has never been disputed by Ms. Brewer. She's fully been — If the legal standard were the one that you're concerned about, that any other — if it were not the but-for standard, if it were the standard that any contribution of anxiety, depression, mental health and so forth makes her ineligible, wouldn't you lose? If Brewer was strictly followed without allowing for benefits beyond 24 months. I see. Okay. Thank you for your argument. Thank you, Judge. Thank you. I'm always a little leery when counsel tries to make the arguments that I'm not making. If she's physically totally disabled alone without the mental part, she's entitled to additional benefits. She didn't prove it. Counsel argues that the District Court didn't rely on this. Well, to be fair, I kind of read your briefs to be making the other argument. Well, I apologize. I understand today you've clarified that. Go ahead. So counsel says that the court didn't rely on etiology or causation. But let's look at the decision, Addendum 12, last page of the decision. The court refers to the Dr. Barter's decision about cognitive dysfunction and that this is downstream effect. It's right there. It's an organic psychiatric disease. Therefore, the court says the limitation doesn't apply. The court misread Brewer and misread the other cases. Clearly, it relied on this etiology, which is improper. Next, counsel still has not identified a single doctor's opinion which says that she was physically totally disabled only, putting aside the mental stuff. Counsel referred to migraines. Her migraines were under control at the time benefits ended. After benefits ended, she started complaining more about migraines. What more proof do we need that that's mental, that that is part of her anxiety and depression symptoms, the same as the chronic fatigue? But to conclude, we don't need to guess at whether she was totally disabled. At the time benefits ended, she was working for Capon Consulting as a counselor, which is her own occupation. At the time the court awarded benefits, if you go to the website, we've cited to it, she was working as a counselor. She's performing her own occupation, not just any occupation. The district court decision, may I sum up, Your Honor? Judge Colton? Thank you. I'll be brief. The district court decision is contrary to Brewer, so legally it is wrong and should be reversed. The district court, as Judge Shepard mentioned, did not you have to look at the findings of fact. The district court did not make sufficient findings of fact. Therefore, we ask that it be reversed and judgment entered for reliance standard. Okay. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counsel are excused. Please call the next case for argument.